LUMAGHI, Defendant in Error, v. ABT, Plaintiff in
Error.

St. Louis Court of Appeals, May 28, 1907.

1. **APPEALS: Payment of Judgment.** The payment of a judg-
ment by a judgment defendant, in order to relieve his land from
the lien of the judgment so that he might convey it, was not a
voluntary payment and did not prevent him from prosecuting
his writ of error in the cause in the appellate court.

2. **VENDOR AND VENDEE: Option Contract: Tender of Per-
formance.** Where a party gave his note for $500 due in three
months for an option contract whereby it was provided that he
should have the exclusive right to purchase the land covered by
the contract within three months, and in case he chose to exer-
cise the option, the $500 should be applied on the purchase

price, the owner of the land could not recover on the $500 note after the expiration of the time without showing an offer to convey the land in accordance with the terms of the contract; evidence showing that the purchaser offered to close the trade on the day of the maturity of the option, was improperly excluded.

3. ——: ——: ——: Reasonable Time. On the other hand the vendor had a reasonable time in which to deliver his deed after being notified that the holder of the option intended to conclude the purchase.

4. ——: ——: ——: ——. In order to recover on the note, the owner of the land would have to show a tender of performance by offering to convey, or show that such a tender would be futile; if the offer of the holder of the option to carry out the agreement was not in good faith, the landowner could recover on the note.

Appeal from St. Louis City Circuit Court. —*Hon. Walter B. Douglas*, Judge.

REVERSED AND REMANDED.

*F. W. Imsiepen* for defendant in error.

(1) The note in suit is a negotiable promissory note, payable during banking hours, at a bank in East St. Louis, Illinois, on December 17, 1902, unconditionally, for value received. The "value received" was an option agreement under which Lumaghi bound himself to acquire title to the land described in the agreement for three months, subject to Abt's election to accept title, and convey the land after such election and acceptance. This restraint and obligation placed upon Lumaghi was a good and sufficient consideration for the $500 note. Warren v. Costello, 109 Mo. 338; 21 Am. and Eng. Ency. Law (2 Ed.), p. 926, note 4; McGowan v. West, 7 Mo. 569, 570; 4 Am. and Eng. Ency. Law (2 Ed.), 188; Clark v. Sigourney, 17 Conn. 517; Darwin v. Smith, 35 Vt. 69; Brown v. McRey, 10 Ired. 72. (2) No fraud is shown by defendant Abt. He got all he asked for as an inducement to execute the note. The sufficiency of

the consideration for the note will therefore not be inquired into. McCormick v. Malin, 5 Blackf. 509; 2 Kent's Comm., star page 465; Baker v. Roberts, 14 Ind. 552; Major v. Brush, 7 Ind. 232;. 2 Greenleaf on Evid., 135. (3) The option did not require Lumaghi to prepare the deed for the land before Abt or assigns entered into a contract of sale by accepting the offer contained in the option. Therefore, Lumaghi was not bound to prepare the deed until the other had been accepted. Smith and Flack's Appeal, 69 Penn. St. 481.

*Klein & Hough* and *Winkelmann & Baer* for plaintiff in error.

(1) "When a contract gives an option to purchase on or before a certain day, time is of the essence of the contract, especially is this the case in unilateral contracts." Dunaway v. Day, 163 Mo., 415; Hallman v. Conlon, 143; Glass v. Rowe, 103 Mo. 513; Dikeman v. Coal Co., 184 Ill. 546. (2) Suppose, that instead of giving the note, five hundred dollars in cash had been paid by Abt to Lumaghi, and on the 17th day of December, 1902, Abt had come forward to Lumaghi's office and there offered to close the deal, and Lumaghi, not being present, Abt was prevented from completing and performing the contract. Can it be said that Abt could not have recovered the money back? To support our contention, that he might have so recovered, we cite Crabtree v. Willes, 19 Ill. 55; Owens v. Rector, 44 Mo. 389; Philipson v. Bates, 2 Mo. 116. (3) We understand the law to be "that the vendor, before he can recover the purchase money, must tender the vendee a deed to the land in an unincumbered condition." Purseley v. Good, 94 Mo. App. 382; McLeon v. Snyder, 110 Mo. 298; Goodwin v. Morey, 111 Ind. 68.

STATEMENT.—An option contract for the sale of lands lying in the county of St. Clair, Illinois, was en-

tered into by respondent and appellant Abt. The contract is as follows:

"This article of agreement, made and entered into this 17th day of September, A. D. 1902, by and between Joseph Lumaghi of the first part, and Paul W. Abt, of the second part, Witnesseth:

"That the party of the first part, for and in consideration of the covenants and agreements hereinafter contained, and in the further consideration of the payment of five hundred ($500) dollars to him in hand paid, the receipt of which is hereby acknowledged, (grants unto the party of the second part, or his assigns, the exclusive right on or before the 17th day of December, 1902, to purchase upon the conditions hereinafter set forth, the following described real estate, situated in St. Clair county, State of Illinois, to-wit:)"

.(Here follows description of the land.)

"The party of the second part, or his assigns, shall have the exclusive right to purchase said real estate on or before said date for the sum of seventeen thousand seven hundred and fifty ($17,750) dollars, to be paid as follows: One third of said sum (less five hundred dollars) cash on delivery of general warranty deed; and the balance in two equal payments, the first to be due and payable December 17, 1903; the second to be due and payable December 17, 1904; with five per cent interest on said two deferred payments, until paid, and to be secured by mortgage on said real estate, which mortgage shall contain the usual provisions.

"The party of the second part, or his assigns, shall further have the right to elect to pay the whole of said seventeen thousand seven hundred and fifty dollars in cash upon delivery of deed. Time to be considered of the essence of this agreement.

"In case land be bought as herein provided that it may be bought, the five hundred ($500) dollars paid for this contract shall be applied on the cash one-third,

to be paid at the time of the delivery of the deed.

"In witness whereof, I have hereunto set my hand and seal this 17th day of September, A. D. 1902.

                    "JOSEPH LUMAGHI.   (Seal.)"

On the date of said contract and in consideration of it, Abt executed to respondent the following promissory note:

                    "East St. Louis, Ill., Sept. 17th, 1902.

"Three months after date, I promise to pay to the order of Joseph Lumaghi, at the First National Bank of East St. Louis, Five Hundred Dollars, for value received, with interest at six per cent per annum from maturity until paid.

                    "PAUL W. ABT."

This action is founded on the foregoing note and the defense is lack of consideration. At the trial respondent, after introducing the note, proved it was given for the option on the St. Clair county land, which belonged to respondent and his brothers and sisters, he owning an undivided one-sixth interest, but holding the title to all of it; that the note was given at the date of the option and if Abt took the land, the five hundred dollars was to go as part of the purchase price. The option contract matured December 17, on which day respondent was absent from St. Louis, having gone to Chicago on the evening of the 16th. Abt resided and was in the banking business just across the Mississippi river, in East St. Louis. His counsel offered to prove by respondent that the latter was not in his place of business on the seventeenth and had not prepared a deed conveying the land to Abt, or obtained a deed from his brothers and sisters, and had left no one in his place of business authorized to close the transaction. This evidence was excluded and an exception saved. Abt's counsel further offered to prove that on December 17 he

(Abt) called at the office of respondent in the city of St. Louis, and was told by the clerk in charge of the office, that respondent was not there; whereupon Abt told the clerk that he (Abt) had come for the purpose of closing the option transaction and asked whether Lumaghi had left a deed. The clerk replied Lumaghi had left no deed for Abt and therefore the latter supposed the transaction was closed; that on said day he was ready and willing to pay the agreed price of the land. This evidence was excluded, appellants excepting. Respondent's counsel offered to show that on the succeeding day, that is, December 18, Lumaghi telephoned from his office in St. Louis to Abt at the latter's bank in East St. Louis, and asked whether Abt wanted a deed to the property; that Abt refused to make any negotiation for a deed and referred Lumaghi to his agent in the city of St. Louis. This evidence was excluded as irrelevant, the court ruling that the note was given for the option contract, and if the option was not carried out, it afforded Abt an action for damages, or the foundation for an action for specific performance, but constituted no defense to the note. Shortly after its maturity respondent placed the note in the Fourth National Bank of St. Louis for collection and it appears said bank transmitted it to Abt's bank in East St. Louis for payment. It was returned with this notation written on it in pencil: "Returned on account of non-delivery of deed on December 17th, as per contract." The cause was instituted before a justice of the peace where respondent obtained judgment. Appellant Russell Richardson became Abt's security on his bond when an appeal was taken to the circuit court, and in the latter court judgment went against Richardson as well as Abt. After an appeal had been allowed by the circuit court to this court and a bill of exceptions filed, but before an appeal bond had been given, the judgment of the circuit court was paid. The payment was made on

October 25, 1904, and satisfaction of the judgment entered on the margin of the record by respondent's attorney. The appeal to this court was abandoned, but subsequently, on November 30th, appellants brought the case here by writ of error. Because the judgment was paid prior to suing out the writ of error, respondent's counsel have filed a motion to dismiss the proceeding in this court and on this motion affidavits have been submitted by both sides. There is but little discrepancy in the statements of the affiants regarding the facts. Richardson had several real estate deals pending, and as the judgment of the circuit court was a lien on his properties, he was unable to conclude the deals; some of which matured by two o'clock on October 25, 1904. In this emergency an attempt was made to arrange with plantiff to release the judgment as to Richardson and take some other security; but respondent's attorney would agree to nothing except an outright payment of the judgment. In order to prevent his prospective deals from being frustrated, Richardson agreed to pay the judgment if respondent's attorney would enter a satisfaction of it by 12:45 p. m., and this arrangement was carried out. Thus far there is no disagreement as to the facts. Respondent's attorney swore it was part of the arrangement that the appeal should be dismissed and the payment of the judgment end the litigation. The latter's statement is denied by the appellants and one of their attorneys. It is certain that the appeal was not prosecuted, but instead this writ of error procured.

GOODE, J. (after stating the facts).—(1) The payment of the judgment was not voluntary, but coerced by the posture of Richardson's affairs. There is nothing to show it was done pursuant to an agreement substituting a new liability for the judgment. Nor was it a compromise, for respondent made no concession,

but was paid all he claimed. The entry of satisfaction on the record was no more than the law required of him in any event (R. S. 1899, secs. 3730 et seq.) and constituted no consideration for a release of errors. [Beardsley v. Smith, 139 Ill. 290, 295.] And the judgment was in no degree in appellants' favor, so as to bring them within the rule that a party cannot accept the fruits of a judgment, or so much of it as is favorable to him, and afterwards have it reviewed by an appellate court. [RoBards v. Lamb, 76 Mo. 192; Noah v. Ins. Co., 78 Mo. App. 370.] This judgment was altogether in favor of respondent and the settlement of it was involuntary. In Joannin v. Ogilvie, 49 Minn. 564, the question was whether a party on whose property a lien had been filed, which he was forced to satisfy in order to obtain money by mortgaging the property, could recover back the amount of the lien, it having been filed without right. The court went into the question of what constitutes payment under duress, so as to justify a recovery back of the money paid, and held the discharge of the lien was coerced. In Peyser v. Mayor, 70 N. H. 497, it was said, in substance, that coercion in law exists where a court having jurisdiction of the person and subject-matter renders a judgment which is collectible in due course; for in such case the party cast in judgment cannot resist its execution and his only remedy is an appeal and reversal for error; that if he cannot resist it when execution is attempted, he may as well pay it without execution to save expense and delay; and will not, in such case, be held to have paid voluntarily. The discharge of the judgment in controversy for the purpose of relieving Richardson of his embarrassment did not preclude appellants from suing out a writ of error. We have looked into many decisions on this subject and find them practically unanimous in holding that payment of a judgment by a party who got no benefit from it, is no obstacle to an appeal or the prose-

cution of a writ of error.  In Cassell v. Fagin, 11 Mo.
207, the Supreme Court, in holding that a party who
had recovered a judgment, could not have it reversed on
error after receiving satisfaction, pointed out the differ-
ence between the situation of such a party and one
against whom the judgment had been given; the latter
being subject to execution, might be forced to pay the
judgment before he could have it reviewed on appeal;
whereas the party obtaining the judgment was not ex-
posed to execution. Because of these different situations,
the court said a judgment creditor could not accept
payment and then reverse the judgment; whereas a
judgment debtor might.  The same doctrine was ap-
plied in Brinkerhoff v. Elliott, 43 Mo. App. 185.  In
Dakota County v. Glidden, 113 U. S. 222, the Supreme
Court of the United States said there could be no ques-
tion that a debtor against whom a judgment for money
is obtained, might pay the judgment and bring a writ
of error to reverse it, and if reversed might recover back
the money.  And also that a defendant in ejectment
might bring a writ of error and, failing to give a super-
sedeas bond, submit to judgment by turning over pos-
session of the land and afterwards recover the land by
writ of restitution, if the judgment was reversed.  In
both those cases, said the opinion, the defendant would
merely have performed the judgment of the court with-
out losing his right to seek a reversal by writ of error
or appeal.  In Richeson v. Ryan, 14 Ill. 74, it appeared
that Ryan had recovered a judgment against Richeson,
which the latter had paid before execution issued, and
then sued out a writ of error.  It was held the payment
did not operate as a release of errors because it was
compulsory.  The same rule was declared in Hatch v.
Jacobson, 94 Ill. 584, wherein it appeared that a decree
had been rendered against Hatch which he had moved
to amend by extending time for payment of the sum
found due, from ten to thirty days, agreeing to pay the

amount of the decree within thirty days if the amendment was allowed. Thereupon the amendment was made by the court. It was held Hatch had not agreed to waive any errors which might have intervened in the proceedings leading up to the decree, and that the agreement should not be regarded as so far voluntary as to release errors. In a standard treatise we find this text, supported by cited cases:

"It is obvious that there is an essential difference between one who pays a judgment against him and one who accepts payment of a sum awarded him by a judgment. Payment by a party against whom a judgment is rendered may often be necessary to protect his property from sacrifice, and what a party does to prevent the sacrifice of his property cannot, with any tinge of justice, be held to preclude him from assailing the judgment. Our cases holding that payment by the defendant does not estop him from prosecuting an appeal rest on solid ground and are sustained by the decisions of other courts. The principle that a party may protect his property from sacrifice by a forced sale upon an execution, sustains the decision that a defendant does not preclude himself from prosecuting an appeal by securing an entry of replevin bail. If the defendant should agree not to prosecute the appeal and in consideration of such an agreement the creditor should abate part of the recovery, extend the time of payment, or do some other act of similar character, then, the right of appeal would be waived since the controversy would be terminated." [Elliott, App. Proc., sec. 152.]

Other decisions in accord with the foregoing are: Chapman v. Sutton, 68 Wis. 657; Oneida County v. Hixon, 82 Wis. 515; Factors etc. Co. v. New Harbour Co., 37 La. Ann. 233; Thayer v. Finley, 36 Ill. 263; Belton v. Smith, 45 Ind. 291; Hayes v. Nourse, 107 N. Y. 577; Watson v. Kane, 31 Mich. 60; Burroughs v. Mukle, 22 Fla. 572; Gordon v. Gibbs, 3 Sme. & Mar.

(Miss.) 433; Shannon v. Padgett, 71 S. W. 487; Richmond etc. Co. v. Boice, 88 Ga. 180; Ex parte Walter, 89 Ala. 237.

2. The theory of the court below that the consideration for the note was simply the exclusive right given Abt to purchase the land within three months, is unsound in view of the stipulation that if Abt elected to purchase wthin said time, the $500 paid for the option should be applied on the first installment of the purchase price, which was to be paid on the delivery of the deed. It is plain that granting Abt the option on the property for three months, was not the entire consideration for his note, but that it had this further consideration: In the event of an actual purchase by him, the amount of the note was to go in part payment for the land. Besides, the right to purchase was worthless unless Lumaghi could and would convey in case of an election to purchase. Hence if Abt offered to complete the deal and respondent refused or was unable to convey the land to him, the consideration of the note wholly failed and there could be no recovery on it by the original payee. [R. S. 1899, secs. 645, 3947.] The doctrine that a vendee of land who has been put in possession, cannot defend against an action for the price without surrendering possession, is not applicable to this case; but rather the doctrine that a vendor cannot recover the purchase price without first conveying, or offering to convey. [Pershing v. Canfield, 70 Mo. 140; Olmstead v. Smith, 87 Mo. 602; McLeod v. Snyder, 110 Mo. 298, 302, 19 S. W. 494; Devore v. Devore, 138 Mo. 181, 39 S. W. 68; Davidson v. Van Pelt, 15 Wis. 341; Pursley v. Good, 94 Mo. App. 382, 389; 68 S. W. 218; Davis v. Watson, 89 Mo. App. 15, 27.] In Pershing v. Canfield, just cited, the contract of sale was like the one before us, in providing for conveyance by warranty deed on payment of the first installment of the purchase money. It was held that the plaintiff could not recover

the purchase money until he showed his willingness to comply with his agreement by tendering a deed for the land. McLeod v. Snyder was an action on notes given for the purchase price of land, for which the vendors had executed to the vendee (defendant) a bond for a deed. The court said payment of the purchase money could not be compelled without the delivery or tender of a sufficient deed. The other cases cited hold the same doctrine. We therefore rule that the court erred in excluding testimony to prove Abt, on the day of the maturity of the option, visited the respondent's office for the purpose of consummating the trade, and so notified the person in charge of the office. This constituted a tender of performance by him and called for performance by Lumaghi. Abt having given notice of his intention to take the land, the amount of the note became a part of the purchase price, which respondent was entitled to receive only if he was able and willing to transfer the title by warranty deed.

3. In ruling that ability and willingness to convey on the part of Lumaghi were conditions of his recovery, we do not accept the theory of Abt's counsel that the absence of respondent from his office on December 17 and his failure to leave a deed with some person authorized to close the transaction, was such a breach of the agreement as necessarily forfeited all Lumaghi's rights under the contract, including the right to recover on the note. This result did not follow unless he was evading compliance with his agreement (acting in bad faith) or was unable to comply; for while he was bound to convey, the law allowed him a reasonable time to do so. Time was of the essence of the option agreement to the extent of requiring Abt to give notice by December 17th of his election to take the land. [Pomeroy, Spec. Perf. Cont., sec. 387; Glass v. Rowe, 103 Mo. 513, 15 S. W. 334; Hollman v. Conlon, 143 Mo. 369, 45 S. W. 275; Dunaway v. Day, 163 Mo. 415, 63 S. W. 731.]

Whether it was of the essence of the contract so as to make it obligatory on Lumaghi to convey on that very day, depends on the terms of the instrument and the circumstances of the case. [Pomeroy, Id., sec. 387; Killough v. Lee, 2 Tex. Civ. App. 260.] On a fair interpretation the agreement does not import that if respondent was not then ready with a deed, Abt was *ipso facto* discharged from further obligation. He had been given the exclusive right to buy, and if he bought was to pay a third of the price, less the amount of the note ($500) with the privilege of paying the whole price, on respondent's delivery of a deed of general warranty. The note in suit was so associated with the deal for the land as part of the price, if the deal went through, that the refusal or inability of Lumaghi to convey the title as agreed, would defeat a recovery on it; as such a contingency would defeat, too, a recovery of the balance of the price. But delay in conveying, if not unreasonable, would not defeat either. Neither the stipulations in the contract nor the nature of the transaction, bound Lumaghi to be ready with his deed on December 17, on pain of discharging Abt from liability. In transactions like this, the owner of the land need not prepare a deed for delivery until he is notified by the holder of the option that he intends to conclude the purchase. [Smith & Flack's Appeal, 69 Pa. St. 481.] Where one party is required by the terms of a contract to do an act on demand, or on the performance of some act by the other party, the former is allowed a reasonable time for performance after the contingency happens. [29 Am. and Eng. Ency. Law (2 Ed.), 69; Mason v. Payne, 47 Mo. 517; Wells v. Smith, 2 Ed. Ch. (N. Y.) 78; McNamara v. Pengilly, 58 Minn. 353; Dunbar v. Stickler, 45 Ia. 385; Gregory v. Christian, 42 Minn. 397; Russell v. Copeland, 30 Maine 322.] The facts of several of those decisions are undistinguishable from the case at bar, as far as the

point in hand is concerned. They hold that a vendor is entitled to reasonable time after demand for a deed, or notification that the buyer intends to conclude the purchase, in which to prepare and deliver the deed. Lumaghi offered to prove that he inquired of Abt by telephone the next day (December 18) whether or not a deed was wanted, but Abt would do nothing further. We find also that Abt's bank returned the note with a memorandum on it that it was not paid because the deed was not delivered on December 17 as agreed. It looks like Abt seized on the absence of Lumaghi from his office as a pretext to get released from the transaction. There is nothing to show fraud or bad faith on Lumaghi's part or inability to convey the land. The title was in him and he had full power to convey it for aught that appears. We therefore hold it does not follow necessarily, that Abt was released from liability on the note by what he offered to prove. Nevertheless his proof ought to have been admitted and so ought the counter-proof offered by respondent that he proposed to go on with the transaction, but Abt refused. In view of the fact that respondent was absent from his place of business on December 17 and the person in charge of Lumaghi's office was notified by Abt that the latter had come to conclude the purchase, Lumaghi was not justified in assuming that Abt had elected against the purchase and had become bound to pay the note without an offer by respondent to convey the land. Respondent had received notice to the contrary and it was incumbent on him to tender performance as a condition precedent to the recovery of the $500; or at least to ascertain from Abt whether the latter still intended to take the land. Of course if Abt was telephoned about the matter and treated his obligation under the contract as released, the tender of a deed by Lumaghi was not essential, because it would have been useless. But either a tender, or proof that it would have been futile,

was essential; and if either can be shown, Abt is liable on the note unless he can show respondent is unable to convey a title.

The judgment is reversed and the cause remanded. All concur.